GS_AMENDED_Complaint_NYC_031412-F.Doc

Carl E. Person
225 E. 36th Street – Suite 3A
New York NY 10016-3664
Tel: 212-307-4444; Fax: 212-307-0247
Email: carlpers2@gmail.com

*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x     **ECF Case**
**DAVID W. MAX, MICHAEL AMSPAUGH,**                                   :
**KENT PERELMAN, SUSAN RUSSELL,**                                     :     **11 CV 08346 (JGK)**
**CLAY FRANKLIN SCROGHAM, GARY SCROGHAM,**                            :
**LINDA SCROGHAM, HOWARD "NICK" CHANDLER,**                           :
**EDWARD T. HOLZHEIMER, as Trustee of the Edward T.**                 :     **AMENDED**
**Holzheimer Trust dated 2/15/99, DALLAS NEIL,**                      :     **COMPLAINT**
**CONWAY PRIVATE EQUITY GROUP LLC,**                                  :
**MICHAEL SKINNER, LIFELINE PRODUCE,**                                :
**IAN O. MAUSNER, ERIC SCOTT and JENNY SCOTT,**                       :     **JURY DEMAND**
**STEPHEN CHARTER, and AMAZING MILLING, LLC.,**                       :
                                                                     :
                                            **Plaintiffs,**          :
                       **v.**                                        :
                                                                     :
**GS AGRIFUELS CORPORATION, GREENSHIFT**                              :
**CORPORATION, KEVIN KREISLER, VIRIDIS**                              :
**CAPITAL, LLC, SUSTAINABLE SYSTEMS, LLC,**                           :
**SUSTAINABLE SYSTEMS, INC, PAUL MILLER,**                            :
**THOMAS SCOZZAFAVA, MARK ANGELO, TROY RILLO,** :
**CARBONICS CAPITAL CORPORATION, YA GLOBAL**                          :
**INVESTMENTS, LP, YA GLOBAL INVESTMENTS**                            :
**(U.S.), LP, YA GLOBAL INVESTMENTS II (U.S.), LP,**                  :
**YA GLOBAL INVESTMENTS SPV, LLC, YORKVILLE**                         :
**ADVISORS, LLC, and JOHN DOES 1 through 100,**                       :
**representing (a) the de facto partnership consisting of**           :
**individual defendants named above and any other individuals** :
**presently unknown to the Plaintiffs who control and divide the** :
**income and/or profits from the non-individual defendants,**        :
**and/or (b) unknown entities controlled and being used by said** :
**partnership or one or more named defendants to remove and**         :
**hide assets originally belonging to GS Agrifuels Corporation,** :
                                                                     :
                                            **Defendants.**          :
------------------------------------------------------------------------x

1

Plaintiffs, as captioned above, by their attorney, Carl E. Person, as and for their Amended Complaint (the "Complaint"), respectfully allege, as follows:

## GENERAL ALLEGATIONS

**Plaintiffs**

1.      Plaintiff, David W. Max, is an individual who resides in Missoula, Montana, and owned shares in Sustainable Systems, Inc. which were sold by the Plaintiff pursuant to a Share Purchase Agreement described in ¶¶ 43-44 below.

2.      Plaintiff, Michael Amspaugh, is an individual who resides in Watsonville, California, and owned shares in Sustainable Systems, Inc. which were sold by the Plaintiff pursuant to a Share Purchase Agreement described in ¶¶ 43-44 below.

3.      Plaintiff, Kent Perelman, is an individual who resides in Missoula, Montana, and owned shares in Sustainable Systems, Inc. which were sold by the Plaintiff pursuant to a Share Purchase Agreement described in ¶¶ 43-44 below.

4.      Plaintiff, Susan Russell, is an individual who resides in Missoula, Montana, and owned shares in Sustainable Systems, Inc. which were sold by the Plaintiff pursuant to a Share Purchase Agreement described in ¶¶ 43-44 below.

5.      Plaintiff, Clay Franklin Scrogham, is an individual who resides in Crimora, Virginia, and owned shares in Sustainable Systems, Inc. which were sold by the Plaintiff pursuant to a Share Purchase Agreement described in ¶¶ 43-44 below.

6.      Plaintiff, Gary Scrogham, is an individual who resides in Crimora, Virginia, and owned shares in Sustainable Systems, Inc. which were sold by the Plaintiff pursuant to a Share Purchase Agreement described in ¶¶ 43-44 below.

7.      Plaintiff, Linda Scrogham, is an individual who resides in Crimora, Virginia, and owned shares in Sustainable Systems, Inc. which were sold by the Plaintiff pursuant to a Share Purchase Agreement described in ¶¶ 43-44 below.

8.      Plaintiff, Howard "Nick" Chandler, is an individual who resides in Jacksonville, Florida, and owned shares in Sustainable Systems, Inc. which were sold by the Plaintiff pursuant to a Share Purchase Agreement described in ¶¶ 43-44 below.

9.      Plaintiff, Edward Timothy Holzheimer, is an individual who resides in Pepper Pike, Ohio, and was the legal owner of Sustainable Systems, Inc. shares under the title "Edward T. Holzheimer TTEE of the Edward T. Holzheimer Trust Dtd 2/15/99", which shares were sold by the Plaintiff pursuant to a Share Purchase Agreement described in ¶¶ 43-44 below.

10.     Plaintiff, Dallas Neil, is an individual who resides in Missoula, Montana, and owned shares in Sustainable Systems, Inc. which were sold by the Plaintiff pursuant to a Share Purchase Agreement described in ¶¶ 43-44 below.

11.     Plaintiff, Conway Private Equity Group LLC, is a corporation formed pursuant to the laws of the State of Ohio, with a principal place of business located at Edward Timothy Holzheimer, c/o Legacy Advisors, LLC, 29425 Chagrin Boulevard, Suite 203, Pepper Pike, OH 44122.  The Plaintiff owned shares in Sustainable Systems, Inc. which were sold by the Plaintiff pursuant to a Share Purchase Agreement described in ¶¶ 43-44 below.

12.     Plaintiff, Michael Skinner, is an individual who resides in San Francisco, California, and owned shares in Sustainable Systems, Inc. which were sold by the Plaintiff pursuant to a Share Purchase Agreement described in ¶¶ 43-44 below.

13.     Plaintiff, Lifeline Produce, formerly known as Lifeline Organics, is an entity with its principal place of business in Victor, Montana, and owned shares in Sustainable Systems, Inc. which were sold by the Plaintiff pursuant to a Share Purchase Agreement described in ¶¶ 43-44 below.

14.     Plaintiff, Ian O. Mausner, is an individual who resides in San Diego, California, and owned shares in Sustainable Systems, Inc. which were sold by the Plaintiff pursuant to a Share Purchase Agreement described in ¶¶ 43-44 below.

15.     Plaintiffs Eric Scott and Jenny Scott, are individuals who reside in Gainesville, Florida, and owned shares in Sustainable Systems, Inc. which were sold by the Plaintiffs pursuant to a Share Purchase Agreement described in ¶¶ 43-44 below.

16.     Plaintiff, Stephen Charter, is an individual who resides in Shepherd, Montana. In addition to the shares of Sustainable Systems Inc. purchased by him, he represents the shares of Sustainable Inc. purchased by Jeanne Charter, now deceased.  These shares in Sustainable Systems, Inc.  were sold by the Plaintiff and Jeanne Charter pursuant to a Share Purchase Agreement described in ¶¶ 43-44 below.

17.     Plaintiff, Amazing Milling LLC, a limited liability company under the laws of Montana, with its headquarters at c/o Mark Bratz, C.P.A., 428 1st Avenue East, Kalispell, Montana 59901, and owned shares in Sustainable Systems, Inc. which were sold by the Plaintiff pursuant to a Share Purchase Agreement described in ¶¶ 43-44 below.

**Defendants**

18.     Defendant, GS AgriFuels Corporation, is a company formed pursuant to the laws of the state of Delaware and until November, 2010 had its principal place of business at One Penn Plaza, Suite 1612, New York, New York 10119.  In November, 2010, it moved its principal place of business to 5950 Shiloh Road East – Suite N, Alpharetta, Georgia 30005.

19.     Defendant, Carbonics Capital Corporation ("Carbonics"), is a company formed pursuant to the laws of the state of Delaware and has its principal place of business at 100 Overlook Center – 2nd Floor, Princeton, New Jersey 08540-7814.  Prior to February 11, 2008, Carbonics was named GreenShift Corporation.  On February 11, 2008, GS CleanTech Corporation (see ¶ 20 below) changed its name to become another GreenShift Corporation ("GreenShift").

20.     Defendant, GreenShift Corporation ("GreenShift"), formerly known as GS Clean Tech Corporation.  Upon information and belief, said GreenShift has its principal place of business at 5950 Shiloh Road East – Suite N, Alpharetta, Georgia 30005.

21.     Defendant Kevin Kreisler ("Kreisler") is an individual and the founder, Chief Executive Officer and Chairman of Carbonics (f/k/a GreenShift Corporation), Chairman and Chief Executive Officer of GreenShift (f/k/a GS CleanTech Corporation), Chairman and Chief Executive Officer of GS AgriFuels Corporation ("GS AgriFuels"), and Chairman and Chief Executive Officer of Viridis Capital, LLC, and resides in New York, New York. Upon information and belief, Kreisler has his business address at 5950 Shiloh Road East – Suite N, Alpharetta, Georgia 30005.  Upon information and belief, Kreisler is a member of the Partnership (defined in ¶ 37 below).

22.     Kreisler resides at 15 Broad Street – Condo Unit 3900, New York, New York 10005, purchased by Kreisler and his wife, Rachael, for $2.74 million on July 27, 2007.  Upon information and belief, the condo unit was purchased with funds that should have been paid to the Plaintiffs herein.

23.     Defendant Viridis Capital, LLC ("Viridis") is a company formed under the laws of the State of New York and has its principal place of business located at Mt. Arlington, N.J., 07856.

24.     Defendant Sustainable Systems, LLC ("Sustainable LLC") is a limited liability company formed under the laws of the State of Montana and has its principal place of business located at 1121 East Broadway, Suite 107, Missoula, MT.

25.     Defendant Sustainable Systems, Inc. ("Sustainable Inc.") is a corporation formed under the laws of the State of Montana and has its principal place of business located at 1121 East Broadway, Suite 107, Missoula, MT.

26.     Defendant Paul Miller ("Miller") is an individual and the President and Chief Executive Officer of Carbonics, Manager of Sustainable LLC, President of Sustainable Inc., and a Vice President for GS Agrifuels.  Miller resides at 2513 Craigs Store Road, Afton, Virginia 22920.  Upon information and belief, Miller is a member of the Partnership (defined in ¶ 37 below).

27.     Defendant Thomas Scozzafava ("Scozzafava") is an individual and the former VP of Acquisitions and Investments of GreenShift and former President and Chief Executive Officer of GS AgriFuels and, upon information and belief, resides and/or has his principal place of business at 10-18 Park Street, Gouverneur, New York 13642 and has a residence address at 1223

Pickering Street, Ogdensburg, New York New York 13669.  Upon information and belief, Scozzafava is a member of the Partnership (defined in ¶ 37 below).

28.     Defendant Troy Rillo ("Rillo") is an individual, a representative of YA Global Investments, LP, is Senior Managing Director for related entity Yorkville Advisors, LLC and resides in Jersey City, New Jersey.  Upon information and belief, Rillo has his business address at 101 Hudson Street, Suite 3700 Jersey City, New Jersey 07303.  Upon information and belief, Rillo is a member of the Partnership (defined in ¶ 37 below).

29.     Defendant Mark Angelo ("Angelo" is an individual, an controlling individual of the YA Global organizations named as defendants herein and Yorkville Advisors, LLC (defined in ¶ 30 below collectively as "YA Global").  Angelo's address is 101 Hudson Street, Suite 3700 Jersey City, New Jersey 07303.  Upon information and belief, Angelo is a member of the Partnership (defined in ¶ 37 below).

30.     Defendant, YA Global Investments, LP ("YA Global LP"), is a company formed pursuant to the laws of the Cayman Islands and has a principal place of business located at 101 Hudson Street, Suite 3700, Jersey City, NJ 07302.

31.     Defendant, YA Global Investments (U.S.), LP ("YA Global US I"), is a company formed pursuant to the laws of the State of Delaware and has a principal place of business located at 101 Hudson Street, Suite 3700, Jersey City, NJ 07302.

32.     Defendant, YA Global Investments II (U.S.), LP (YA Global US II"), is a company formed pursuant to the laws of the State of Delaware and has a principal place of business located at 101 Hudson Street, Suite 3700, Jersey City, NJ 07302.

33.    Defendant, YA Global Investments SPV, LLC ("YA Global SPV"), is a company formed pursuant to the laws of the State of Delaware and has a principal place of business located at 101 Hudson Street, Suite 3700, Jersey City, NJ 07302.

34.    Defendant, Yorkville Advisors, LLC ("Yorkville"), is a company formed pursuant to the laws of the State of Delaware and has a principal place of business located at 101 Hudson Street, Suite 3700, Jersey City, NJ 07302.

35.    Defendants YA Global, YA Global US I, YA Global US II, YA Global SPV, and Yorkville are related entities, each of which shares management, directors and a principal place of business located at 101 Hudson Street, Suite 3700, Jersey City, NJ 07302, and are collectively referred to hereinafter as "YA Global."

36.    Defendants John Does 1 through 100 represent (a) the de facto partnership consisting of individual defendants named in the caption above and any other individuals presently unknown to the Plaintiffs who control and divide the income and/or profits from the non-individual defendants captioned above and/or (b) unknown entities controlled and being used by said partnership or one or more named defendants to remove and hide assets originally belonging to GS Agrifuels Corporation.

**De Facto Partnership**

37.    Upon information and belief, the above-captioned individual defendants are operating as an undisclosed, de facto partnership (the "Partnership") of (a) controlling and using the above-captioned non-individual defendants including various John Doe defendants as alter egos of the Partnership, (b) moving and shifting assets to various defendants including John Doe defendants without adequate compensation for the purpose of hiding assets and profits, and (c)

dividing up the income and profits derived by the non-individual defendants including various John Doe defendants and the members of the Partnership in accordance with percentages or participations prescribed by the Partnership. A letter from Kevin Kreisler dated April 24, 2008 (**Exhibit A** hereto) shows the control being exercised by YA Global.  **Exhibit B** hereto is a letter from GreenShift to former Sustainable shareholders dated March 5, 2008 describing a restructuring.  **Exhibit C** is a notice by GS Agrifuels of its short form merger and restructuring effective February29, 2008.  **Exhibit D** is page 4 of a release by GreenShift dated March 6, 2008 regarding Culbertson, Montana plant and others.  **Exhibit E** is a letter from Sustainable Systems, Inc. to its shareholders dated March 12, 2007 discussing "Conversion to Corporation and Merger with GS AgriFuels Corporation".  Some of the transfers and transactions of the Partnership and its alter ego entities mainly as reported in filings with the Securities and Exchange Commission are described in **Exhibit F** attached hereto.

**Successor and Alter**
**Ego Relationships and**
**Privity of Contract**

37A.   Upon information and belief, each of the above-captioned non-individual defendants is an alter ego of the Partnership and each of the non-individual defendants (other than YA Global and the Partnership) and some of the John Does 1-100 is/are an alter ego of YA Global.

37B.   Each of the non-individual defendants is a successor in interest to GS Agrifuels by reason of the transfer or assignment of all or substantially all of the assets of GS Agrifuels to such entities, directly or through intermediate transfers or assignments, all of which were orchestrated by the Partnership and/or YA Global, which control and dominate these entities as their alter egos, and use these and various other entities to hide and transfer their assets,

including the assets formerly held by GS Agrifuels, to prevent the activities of the defendants from being traceable and known.

37C.    By reason of the transfers from and successor relationships to GS Agrifuels described above, each of the defendants is privity of contract with each of the Plaintiffs.

37D.    All of the assets of each of the non-individual and John Doe defendants are assets belonging to and owned directly by the Partnership and/or YA Global.

37E.    Upon information and belief, the business records of each of the non-individual and non-individual John Doe defendants are not maintained as required by law, so that the shareholders or investors of each of the non-individual defendants and non-individual John Doe defendants is liable for the obligations of such non-individual entities.

37F.    The defendants are a single business entity (the Partnership) consisting of a de facto business partnership owning and controlling as alter egos each of the non-individual defendants entities, including non-individual John Doe entities, used without regard to corporate or other entity formalities to carry out the business activities of the Partnership through secret, controlled entities and individuals having no independent business significance and without paying fair value for the assets they acquire.

37G.    Upon information and belief, one of the purposes of the Partnership and its defendant entities is to prevent U.S. taxing authorities from obtaining payment of taxes due and owing on many of the transactions occurring within or with the Partnership.

38.    Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in New

York County.  Upon information and belief, the principal executive offices of some of the defendants (including one or more of the John Doe defendants) are located within New York County.

39.     The claims alleged herein arise from business activities by Defendants taking place in New York County, and New York State, with some of the Defendants having their businesses located in New York County or New York State.  Upon information and belief, each of the Defendants, by itself or through an agent, has been transacting business within New York State or has been contracting to supply goods or services in New York State, and has committed one or more tortious acts as to the Plaintiffs within New York State, or from outside of New York State has committed tortious acts causing injury to persons or property within New York State, or owns, uses or possesses real property located within New York State. [CPLR 302(a)]

40.     Defendant GS AgriFuels entered into negotiations and agreed to purchase all of the outstanding shares of stock of Sustainable Inc. from all of its shareholders.  At the time, Sustainable LLC was a wholly owned subsidiary of Sustainable Inc., and its only asset. Sustainable LLC was an operating renewable energy and biobased product company organized under the State of Montana and having its principal place of business in Missoula, Montana. Sustainable LLC owned an oilseed extraction and refining plant in Culbertson, Montana (the "Culbertson Plant").  Plaintiffs were members of Sustainable LLC who, through a reorganization, were shareholders in Sustainable Inc. at the time of the acquisition.

41.     Defendant Miller, who was also a member and majority shareholder of Sustainable LLC and a shareholder in Sustainable Inc., acted as agent for the Plaintiffs in negotiating the purchase of the outstanding shares of stock of Sustainable Inc. from all of its

shareholders, represented the Plaintiffs in negotiating that transaction and communicated the details of the negotiations to the Plaintiffs.

42.     On or about May 16, 2006, a meeting occurred at the Culbertson Plant which was attended by Miller; Neil Turnbull (General Manager of the Culbertson Plant); Michael Skinner (an interest holder in Sustainable LLC and consultant for that company); and Defendants Kreisler, Scozzafava and Rillo.   The purpose of the meeting was for Kreisler, Scozzafava and Rillo to conduct due diligence regarding the Culbertson Plant as a part of the expressed intent to acquire an interest in Sustainable LLC. During the meeting, the parties also discussed acquisition terms, the status of ownership and obligations regarding Culbertson Plant, and the purchaser's access to the financial resources necessary to fund the deal and the necessary expansion of the Culbertson Plant.

43.     The acquisition by GS AgriFuels Corporation of Sustainable Inc. was accomplished through separate Share Purchase Agreements (see ¶ 44 below) with each Sustainable Inc. shareholder such that after the Share Purchase Agreements were executed, GS AgriFuels owned 100% of the stock of Sustainable Inc.  In other words, the transaction at issue was a stock purchase acquisition of all of the outstanding shares of stock of any kind in Sustainable Inc., and, therefore, also 100% ownership of its subsidiary, Sustainable LLC, by GS AgriFuels.

44.     The Share Purchase Agreements were entered into on March 6, 2007, with all shareholders of Sustainable Inc., including Defendant Miller, and each of the Plaintiffs.   A copy of the Share Purchase Agreement is part of **Exhibit G** hereto (which also includes a related Stock Assignment and Security Agreement).  **Note:** Exhibit G is not an executed copy, which

copy(ies) were retained by Defendant Paul Miller, the escrow agent for the transaction. **Exhibit H** hereto is a copy of 4 signature pages signed by plaintiff Linda B. Scrogham, for the Share Purchase Agreement and other agreements.

44A.    Each of the various agreements provides for venue in New York County or the Southern District of New York, and that New York law is to govern the contracts. ¶ 9 of the Intercreditor Agreement; §§ 5.8 and 5.11 of the Share Purchase Agreement; § 6.7 of the Security Agreement; § 10 of the Secured Convertible Debenture; and ¶ 12 of the Pledge and Escrow Agreement.

44B.    New York law governs the statute of limitations for each of the actions herein.

45.    The separate Share Purchase Agreement each of the Plaintiffs entered into with GS AgriFuels was identical but for the identity of the parties and the amounts GS AgriFuels agreed to pay each of the Plaintiffs.  In each case, however, GS AgriFuels agreed to pay each of the Plaintiffs:  (a) a specific amount of cash and GS Agrifuels stock at closing; (b) a specific amount of money in the form of a secured convertible debenture payable in the form of immediately available U.S. funds within thirty days of the completion and commissioning of Sustainable LLC's crush plant expansion (termed the "Expansion Debenture" in the Share Purchase Agreement); (c) a specific amount of money in the form of shares of GS AgriFuels common stock at the rate of $4.50 per share, for a total specific amount of shares (termed the "Purchaser Shares"); and (d) a specific amount of money on the first anniversary of the closing date, and a similar specific amount of money on the second  anniversary of the closing date in the form of secured convertible debentures (termed the "Term Debentures") convertible into GS AgriFuels common stock.

46.     In addition, Defendant Viridis LLC pledged 25,000,000 shares of Defendant GreenShift common stock as security for performance on the Share Purchase Agreements.  The purchaser's obligations under each of the above Share Purchase Agreements was additionally secured by the 11,270,515 shares of Sustainable Inc. common stock held by GS AgriFuels, most of which it acquired pursuant to the Share Purchase Agreements.

47.     The "closing date" is specified in the Share Purchase Agreements (Exhibit G) as March 6, 2007; accordingly, the first anniversary date referred to in the purchase price two paragraphs above was March 6, 2008.

48.     After much delay, GS AgriFuels finally made the cash and stock payments to Plaintiffs specified in ¶ 45 subpart (a), but has not made good on other promised consideration since the closing date.  Notwithstanding repeated inquiries, demands and requests by Plaintiffs, Defendants have failed to make those payments specified in subpart (d) of ¶ 45 above.

49.     In addition to the consideration set forth in ¶ 42 above, an integral part of the Share Purchase Agreements between Plaintiffs and Defendant GS AgriFuels was a provision in which GS AgriFuels agreed to "provide any necessary capital and other resources to Sustainable that may be required to complete and fully commission the Expansion," and further agreed that "[t]he timeline, budget and funding for the Expansion shall be as agreed upon between Purchaser and the former executive management of Sustainable within THIRTY (30) days of the execution hereof."  In essence, as part of the stock purchase agreement, GS AgriFuels was to make significant investments in Sustainable LLC, in order to allow the company to grow and flourish and to fund the purchase.

50.     As a material inducement to the Plaintiffs to enter into the Share Purchase Agreements, Defendants represented to Plaintiffs that funding necessary to complete the expansion was already in place and that the expansion would take place immediately.

51.     Despite efforts and requests by the Plaintiffs, Defendant GS AgriFuels refused to enter into discussions regarding the timeline, budget and funding for the expansion referred to in ¶ 45 above to the extreme detriment of the Culbertson Plant, and have completely failed to fund the expansion, as committed.

52.     Plaintiffs subsequently learned that in fact, Defendants did not have and had never obtained the funding necessary to complete the expansion.

53.     As a result of Defendants' failure to fund the expansion, Sustainable LLC's Culbertson Plant lost out on an extremely large amount of revenues, was unable to generate sufficient cash flow to meet its debts and other obligations, has lost key employees and has losing crop grower confidence.  In addition, Defendants' failure to fund the expansion has resulted in jeopardizing the values of Sustainable Inc., GS Agrifuels and GreenShift shares pledged as security by Defendants in the Share Purchase Agreements.

54.     On or about February 15, 2008, Defendant GreenShift announced plans to take GS AgriFuels private, and further announced that, on or before March 31, 2008, all shareholders of GS AgriFuels would receive a cash payment of $0.50 per share held in GS AgriFuels and would thereafter cease to be shareholders of GS AgriFuels as a result of this transaction; that is, the GS AgriFuels shares were cancelled in consideration of $0.50 per share.  Despite demands for the same, Plaintiffs have never received $0.50 per share in their GS AgriFuels stock, and, on information and belief, are the only shareholders of GS AgriFuels stock to not be paid such

payment.   In addition, this going private transaction unilaterally executed by GreenShift Corporation, the Partnership, YA Global and GS AgriFuels prevented their performance of issuing additional shares of their stock pursuant to the Share Purchase Agreements.  In short, all of Plaintiffs' GS AgriFuels shares were cancelled in a transaction by GreenShift which eviscerated the consideration the Plaintiffs had received in the Share Purchase Agreements, the issuance of their additional "Purchaser Shares" (which were valued at $4.50 per share in the Share Purchase Agreements) was made impossible and cannot occur under current circumstances, and, adding insult to injury, Plaintiffs were singled out from all other GS AgriFuels shareholders in that they did not receive their $0.50 per share.

55.     Subsequent to the foregoing, Miller settled and released his claims against other Defendants relating to the foregoing transactions, and has received payment including stock options and an employment position first with GS AgriFuels and later with defendant Carbonics. On January 21, 2011, Miller left his positions as President, Chief Executive Officer and a Director of EcoSystem Corporation, with Kevin Kreisler appointed to replace Miller.

56.     Pursuant to the Defendants' defaults under the Pledge and Escrow Agreement and other transaction documents, and without waiving any other remedies available at law, in equity, or by statute, Plaintiffs sent Defendants a Notice of Default and demanded that certain shares in Sustainable Inc. be transferred to the Plaintiffs under § 6(a) of the Pledge and Escrow Agreement.

57.     Plaintiffs received certain shares in Sustainable Inc. but, despite demand, the Defendants failed to appropriately adjust the number of Sustainable Inc. shares transferred to Plaintiffs for recapitalizations, forward or reverse stock splits, stock dividends and other

adjustments in the capital structure of Sustainable Inc., GS Agrifuels and GreenShift that have occurred since the execution of the transaction documents. [Note: Defendants represented that GS AgriFuels sold 100% of Sustainable Inc. to Carbonics, even though Plaintiffs still have Sustainable Inc. shares in their possession.]

58.     In addition to the foregoing dilution of the Sustainable Inc. shares, the conduct of Defendants has further diluted the value of such shares through the mismanagement of Sustainable Inc., its wholly owned subsidiary Sustainable LLC, and the Culbertson Plant, a facility which constitutes substantially all the assets of Sustainable Inc.

### Count 1 – Breach of Contract

### (All Plaintiffs v. the Partnership and its Partners, YA Global,
### GreenShift, Carbonics, GS AgriFuels, Viridis and
### All Other Non-Individual Defendants)

59.     Plaintiffs repeat and reallege each of the allegations set forth in ¶¶ 1-58 above as against the Defendants named immediately above.

60.     Plaintiffs entered into binding Share Purchase Agreements with Defendant GS AgriFuels.

61.     Pursuant to the terms of these Share Purchase Agreements, GS AgriFuels was obligated to pay the consideration to Plaintiffs as set forth in the contract, and to fund the expansion of the Culbertson Plant manufacturing operation.

62.     Defendant GS AgriFuels breached its obligations under the Share Purchase Agreements by failing to perform as required by the terms of the agreements.

63.     Defendants GreenShift and GS AgriFuels also breached their contractual obligations to the Plaintiffs by failing to fund the expansion and by cancelling Plaintiffs' shares in GS AgriFuels without consideration.

64.     Defendant Viridis LLC breached its contractual obligation to Plaintiffs to turn over the 25,000,000 shares of pledged GreenShift stock on a pro rata basis as set forth in the Share Purchase Agreements and related contracts.

65.     Carbonics is the new name and successor in interest of Defendant GreenShift. Effective June 30, 2010, Viridis acquired 100% of the stock of Sustainable Systems, Inc. from Carbonics for $10, and Viridis agreed to indemnify Carbonics as to all obligations of Sustainable Systems, Inc.

65A.    The Partnership, each of its partners, and YA Global are liable to each of the Plaintiffs for all breaches of contract by the other defendants on the basis of the alter ego relationships described in ¶¶ 37, 37A, 37B and 37F above and the transfers and assignments of assets described in ¶¶ 37B and 37C above.

**Damages**

66.     As a consequence of Defendants' breaches, each of the Plaintiffs has sustained damages, with the total amount in excess of $6,000,000.

**Punitive Damages – Activities**
**Directed to the Public, Including**
**Shareholders, Creditors, Taxing Authorities**

66A.    The activities of each of the Defendants has been directed to the public, including

(a) businesses dealing with the Partnership and/or YA Global,

(b) a million or more shareholders of and other investors in businesses dealing with the Partnership and/or YA Global,

(c) a million or more shareholders of and other investors in public companies targeted by the Partnership and/or YA Global for wrongful taking of their assets,

(d) tens of thousands of creditors of the non-individual defendants and non-individual John Doe defendants who are unable to locate assets for payment of debt, and

(e) taxing authorities (representing hundreds of millions of taxpayers) which are unable to piece together the activities of the Partnership and YA Global to determine the amount of and collect taxes on the profits of the Partnership and YA Global.

66B.    The activities of the Partnership and YA Global have been morally culpable and done with near-criminal indifference to the civil obligations of the Partnership and YA Global, and are part of a pattern of publicly-directed misconduct.

66C.    The activities of the Partnership and YA Global were in violation of a duty owed to the Plaintiffs by the Partnership and YA Global independent of that encompassed by the agreements with the Plaintiffs, involving the duty of using legal entities in a lawful way to enable the Plaintiffs and others to rely upon their dealings with such entities.

66D.    Plaintiffs, to vindicate this public interest, are entitled to punitive damages against each of the Defendants in an amount equal to nine times the amount of actual damages (including consequential damages) suffered by the Plaintiffs.

**Count 2 – Breach of Covenant of Good Faith and Fair Dealing**

**(All Plaintiffs v. the Partnership and its Partners, YA Global,**
**GreenShift, Carbonics, GS AgriFuels, Viridis and**
**All Other Non-Individual Defendants)**

67.     Plaintiffs repeat and reallege each of the allegations set forth in ¶¶ 1-66 above as against the Defendants named immediately above.

68.     The Share Purchase Agreements between Plaintiffs and Defendant GS AgriFuels contain an implied covenant of good faith and fair dealing.

69.     Pursuant to the terms of the implied covenant of good faith and fair dealing, Defendants GS AgriFuels, GreenShift and their successor companies (including the Partnership, YA Global and the other non-individual defendants) were obligated to act honestly with Plaintiffs and to observe common standards of fair dealing.

69A.    Each of the non-individual defendants is in privity of contract with each of the Plaintiffs for one or more of the following reasons: (a) having been a named party in the agreement with Plaintiffs; (b) being a successor to GS AgriFuels for any of the reasons alleged in ¶ 37B above; (c) being the alter ego of the Partnership and/or YA Global for any of the reasons set forth in ¶¶ 37 and 37A-37F; and (d) for any other reason set forth in ¶¶ 37 and/or 37A-37G.

70.     Defendants breached the implied covenant of good faith and fair dealing by failing to pay the agreed consideration, failing to fund the Culbertson Plant expansion, and in cancelling Plaintiffs' shares in GS AgriFuels without consideration and in transferring and assigning the assets of GS AgriFuels and other non-individual defendants to various entities controlled by the Partnership and YA Global, thereby causing the disappearance and hiding of such assets within the estimated 100-500 entities used by the Partnership and YA Global to hide their assets, transactions, income and profits.

**Damages**

71.     As a consequence of Defendants' breaches, each of the Plaintiffs has suffered

damages, with the total amount in excess of $6,000,000.

**Punitive Damages – Activities
Directed to the Public, Including
Shareholders, Creditors, Taxing Authorities**

71A.   Each of the Plaintiffs is entitled to an award of punitive damages against each of

the above-identified defendants for the reasons set forth in ¶¶ 66A, 66B, 66C and 66D above.

**Count 3 – Negligent Misrepresentation**

**(All Plaintiffs v. the Partnership, Kreisler, Scozzafava, Rillo, Miller and any other
individual partners in the Partnership, GreenShift, Carbonics,
GS AgriFuels, Viridis, Sustainable LLC, Sustainable Inc. and YA Global)**

72.     Plaintiffs repeat and reallege each of the allegations set forth in ¶¶ 1-71 above as

against the Defendants named immediately above.

72A.   This claim is to be determined under New York law, pursuant to the choice of law

provisions in the contracts between Plaintiffs and Defendants, as follows:

**Section 5.8       Governing Law**

This Agreement shall be governed by the laws of the State of New York and the United States of America
(regardless of the laws that might be applicable under principles of conflicts of law or international law) as to all
matters including, but not limited to, matters of validity, construction, effect and performance.

**Section 5.11      Consent to Jurisdiction**

The Parties hereto hereby submit and consent to the exclusive venue and jurisdiction of the Supreme Court of the State of New York, in respect of the interpretation and enforcement of the provisions of this Agreement, and hereby waive and agree not to assert as a defense in any action, suit or proceeding for the interpretation or enforcement of this Agreement, that it is not subject thereto or that such action, suit or proceeding may not be brought or is not maintainable in said courts or that this Agreement may not be enforced in or by said courts or that its property is exempt or immune from execution, that the suit, action or proceeding is brought in an inconvenient forum, or that the venue of the suit, action or proceeding is improper.  The Parties hereto agree that service of process may be made in any manner permitted by the laws of the State of New York or the federal laws of the United States in any

such action, suit or proceeding against the Parties hereto with respect to this Agreement.  Service of process upon such authorized agent shall be deemed, in every respect, effective service of process upon the Parties hereto and shall remain effective until the Parties hereto shall appoint another agent for service or process acceptable to the other Party.  The Parties hereto agree that final judgment (with all right of appeal having expired or been waived) against it in any such action, suit or proceeding shall be conclusive and that the other Party is entitled to enforce such judgment in any other jurisdiction by suit on the judgment, a certified copy of which shall be conclusive evidence of the fact and amount of indebtedness arising from such judgment.

72B.    The above contractual provisions require that the statute of limitations for each of the actions herein be determined under New York CPLR.

72C.    CPLR § 213(1) ["an action for which no limitation is specifically prescribed by law"] provides a 6-year limiting period for negligent misrepresentation.

72D.    The contractual provisions set forth in ¶ 72A above are clearly intended to eliminate questions as to the law of which state is to be followed in resolving any disputes under the agreements, so that the statute of limitations for an action for negligent misrepresentation is 6 years, as provided by CPLR § 213(1), without the delays and costs of dispute.

73.    Defendants owed a duty to exercise reasonable care in communications with Plaintiffs, prior to the purchase and sale transaction, regarding material facts relating to the purchase and sale transaction.

73A.    The representations set forth in ¶¶ 74A-74K below (including the representation that the funds were in place) were made by the GS Agrifuels team (of Defendants Kevin

Kreisler, M. Rillo and Tom Scozzafava) to Plaintiff Michael Skinner and (Defendant) Paul

Miller at a series of meetings held at the Culbertson plant. The meetings were held during

October 2006, about 5 months prior to execution of the agreements on March 6, 2007. Michael

Skinner and Paul Miller advised the other Plaintiffs about these representations made during

these meetings. The failures to disclose at the Culbertson meetings were material non-disclosures

to all the Plaintiffs.

74.     These negligent representations of material facts (the "Negligent

Representations") by Defendants relating to the subject purchase and sale transaction are:

A.     Failure to tell Plaintiffs prior to execution of the Share Purchase

Agreement dated March 6, 2007 that GS Agrifuels was actually the alter ego of the

Partnership and/or YA Global and unable itself to fulfill its obligations under the

Share Purchase Agreement, and in immediate breach of the following provisions of

the agreement:

**Section 3.1      Organization and Good Standing**

Purchaser is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware. Purchaser is duly qualified to do business and is in good standing as a foreign corporation in each jurisdiction where qualification as a foreign corporation or otherwise is required to conduct its business.

**Section 3.2      Authority, Approvals and Consents**

Purchaser has the corporate power and authority to enter into this Agreement and to perform its obligations hereunder.  The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized and validly approved by the Board of Directors of Purchaser and by their respective stockholders if necessary and no other corporate or other proceedings on the part of Purchaser are necessary to authorize and approve this Agreement and the transactions contemplated hereby.  Purchaser hereby expressly represents that it has fully and properly complied with all aspects of applicable Delaware corporate law in entering into this Agreement and for consummating the transactions contemplated hereunder.  This Agreement has

been duly executed and delivered by, and constitutes a valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms.

**Section 3.5       Binding Nature**

This Agreement shall be, when duly executed and delivered, a legally binding obligation of the Purchaser enforceable in accordance with its terms.

B.       Failure to tell the Plaintiffs prior to execution of the Share Purchase Agreement that the Partnership and/or YA Global intended not to make the agreement a legally binding obligation of GS Agrifuels by making various assignments and transfers of GS Agrifuels' assets to various non-individual entities and causing such assets to no longer be owned by GS Agrifuels and be owned instead by one or more successor entities all of which are alter egos of the Partnership and YA Global.

C.  That funding was in place to complete the expansion of the Culbertson Plant;

D.  That GS Agrifuels was prepared to commence the expansion of the Culbertson Plant immediately after completion of the purchase and sale transaction;

E.  That GS Agrifuels was prepared to pay each of the Plaintiffs valuable consideration for the sale of their respective interests in Sustainable Inc. in the form of a secured convertible debenture payable in the form of immediately available U.S. funds within thirty days of the completion of the expansion of the Sustainable Inc. crush plant;

F.  That GS Agrifuels common stock, received by the Plaintiffs in consideration for the sale of their respective interests in Sustainable Inc. (v), was worth $4.50 per share;

G.  Failure to disclose the Partnership's plans to take GS Agrifuels private to cancel, discount and/or dilute the value of the common stock, received by the Plaintiffs in consideration for the sale of their respective interests in Sustainable (v) to $0.50 per share;

H.  That Plaintiffs would receive "go private" payments of $0.50 per share for cancellation of the GS Agrifuels stock received by or promised to Plaintiffs' as part of the consideration for the sale of their respective interests in Sustainable Inc. (v);

I.  That GS Agrifuels was prepared and intended to pay to each of the Plaintiffs a specific amount of valuable consideration for the sale of his/her respective interest in Sustainable Inc. (v) on both the first and second anniversaries of the closing date of the subject transaction;

J.  That in the event of any default by GS Agrifuels, it was prepared to and would provide to each of the Plaintiffs specific numbers of shares of Sustainable Inc. common stock held by GS AgriFuels, and representations as to the value of that stock; and

K.  Representation by omission of material fact that the Defendants would not engage in market transactions, directly or indirectly, to depress the price of GS Agrifuels and  GreenShift stock through naked short selling, death spiral financing, or otherwise.

75.  Each of the Negligent Representations was untrue.

76.     Defendants made each of the Negligent Representations without any reasonable ground for believing it to be true.

77.     Each of the Negligent Representations was made with the intent to induce the Plaintiffs to rely on it in entering into the purchase and sale transaction.

78.     The Plaintiffs were unaware of the falsity of each or any of the Negligent Representations; each of the Plaintiffs did rely and each was justified in relying upon each of the Defendants' Negligent Representations.

79.     Defendants' conduct as described above constitutes negligent misrepresentation.

80.     Each of the Plaintiffs, as a result of his/her/its reliance upon the Defendants' Negligent Representations, has sustained damages, with the total amount in excess of $6,000,000.


**Count 4 – Fraud**

**(All Plaintiffs v. the Partnership, Kreisler, Scozzafava, Rillo, Angelo, Miller, GreenShift, Carbonics, GS AgriFuels, Viridis, YA Global, and Yorkville Advisors)**

81.     Plaintiffs repeat and reallege each of the allegations set forth in ¶¶ 1-80 above as against the Defendants named immediately above.

81A.    Each of the representations set forth above in ¶¶ 74A-74K was the representation to Plaintiffs of a material fact (the "Representations").

82.     Each of the Representations was false.

83.     Each of the Representations was material to the purchase and sale transaction and Plaintiffs' decisions to enter into that transaction.

84.     Defendants knew that each of the Representations was false.

85.     Defendants acted with scienter and intended that the Plaintiffs act or rely upon Defendants' false Representations.

86.     Plaintiffs were not aware of the falsity of Defendants' Representations at the time the representations were made or at the time they entered into the Share Purchase Agreement on March 7, 2006.

87.     Plaintiffs reasonably relied upon each of the Representations.

88.     Plaintiffs entered into the Share Purchase Agreement as a result their reliance upon the Representations.

89.     Plaintiffs have suffered damages as a direct and proximate result of Defendants' fraudulent misrepresentations, with the total amount in excess of $6,000,000.

90.     Defendants' conduct constitutes actual fraud and actual malice, egregious and outrageous conduct and gives rise to and warrants punitive damages under New York law (see ¶¶ 66A-66D above . The activities of the Defendants were performed with near criminal indifference to their civil obligations and were egregious and morally reprehensible.

91.     Each of the Plaintiffs is entitled to punitive damages in the amount of 9 times the amount of his/her/its actual (including consequential) damages and pre-judgment interest.

**WHEREFORE**, Plaintiffs pray for the following relief:

1.      An award against Defendants and in favor of Plaintiffs for all damages suffered by Plaintiffs and all gains, profits, and advantages unlawfully obtained by Defendants at Plaintiffs' expense, in amounts to be determined at trial, but which exceeds as to all Plaintiffs a total of $6,000,000, plus pre-judgment interest at 9% simple;

2.      An award against each of the Defendants for punitive damages under New York law in an amount not less than three (3) times, and not exceeding nine (9) times, the actual (including consequential) damages sustained by each of the Plaintiffs;

3.      Costs, disbursements and attorneys fees for this action to the extent allowed by law; and

4.      For such and other further relief as the Court may deem just and proper.


## Jury Demand

Plaintiffs demand a trial by jury as to each factual issue triable by right to a jury.


**Dated:**        **New York, New York**
               **March 14, 2012**

_____
        **Carl E. Person**
        *Attorney for the Plaintiffs*
        **225 E. 36th Street – Suite 3A**
        **New York NY  10036-3803**
        **Tel:  (212) 307-4444**
        **Fax:  (212) 307-0247**
        **Email: carlpers2@gmail.com**

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing

## AMENDED COMPLAINT

(the "Document") was served on March 14, 2012 on the attorneys for the appearing defendants (as listed below) by causing a true and correct copy of the Document to be sent by first class mail, postage pre-paid to:

| Attorney/Address | Clients, Email/Telephone |
|---|---|
| Caryn Gail Schechtman<br>John Vukelj, Esq.<br>DLA Piper US LLP (NY)<br>1251 Avenue of the Americas<br>New York, NY 10020 | Attys for GSAgrifuels, GreenShift, Kevin Kreisler,<br>Viridis, Sustainable Systems LLC/Inc., Miller<br>Angelo, Rillo, Carbonics, YA Global, Yorkville<br>Tel:  (212)-896-2983 Fax: (212)-835-6001<br>Email: caryn.schechtman@dlapiper.com<br>Email: john.vukelj@dlapiper.com |
| Stuart Arlin Blander, Esq.<br>Heller, Horowitz & Feit, P.C.<br>292 Madison Avenue<br>New York, NY 10017 | Attys for GS Agrifuels, GreenShift, Kevin Kreisler<br>Viridis, Sustainable Systems, LLC/Inc., Miller<br>Angelo, Rillo, Carbonics, YA Global, Yorkville<br>Tel:  212-685-7600  Fax: 212-696-9459<br>Email: SABlander@hhandf.com |

**Dated:   March 14, 2012**

_____
**Carl E. Person**

**UNITED STATES DISTRICT COURT**

Index No.  11 CV 08346 (JGK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x
DAVID W. MAX, MICHAEL AMSPAUGH,                    :
KENT PERELMAN, SUSAN RUSSELL,                      :
CLAY FRANKLIN SCROGHAM, GARY SCROGHAM,             :
LINDA SCROGHAM, HOWARD "NICK" CHANDLER,            :
EDWARD T. HOLZHEIMER, as Trustee of the Edward T. :
Holzheimer Trust dated 2/15/99, DALLAS NEIL,       :
CONWAY PRIVATE EQUITY GROUP LLC,                   :
MICHAEL SKINNER, LIFELINE PRODUCE,                 :
IAN O. MAUSNER, ERIC SCOTT and JENNY SCOTT,        :
STEPHEN CHARTER, and AMAZING MILLING, LLC.,        :
                                                   :
                                    Plaintiffs,    :
                       v.                          :
                                                   :
GS AGRIFUELS CORPORATION, GREENSHIFT               :
CORPORATION, KEVIN KREISLER, VIRIDIS               :
CAPITAL, LLC, SUSTAINABLE SYSTEMS, LLC,            :
SUSTAINABLE SYSTEMS, INC, PAUL MILLER,             :
THOMAS SCOZZAFAVA, MARK ANGELO, TROY RILLO,        :
CARBONICS CAPITAL CORPORATION, YA GLOBAL           :
INVESTMENTS, LP, YA GLOBAL INVESTMENTS             :
(U.S.), LP, YA GLOBAL INVESTMENTS II (U.S.), LP,   :
YA GLOBAL INVESTMENTS SPV, LLC, YORKVILLE          :
ADVISORS, LLC, and JOHN DOES 1 through 100,        :
representing (a) the de facto partnership consisting of :
individual defendants named above and any other individuals :
presently unknown to the Plaintiffs who control and divide the :
income and/or profits from the non-individual defendants, :
and/or (b) unknown entities controlled and being used by said :
partnership or one or more named defendants to remove and :
hide assets originally belonging to GS Agrifuels Corporation, :
                                                   :
                                    Defendants.    :
-------------------------------------------------------------------------------x

AMENDED COMPLAINT
(with Exhibits A-G)

Carl E. Person
*Attorney for the Plaintiffs*
225 E. 36th Street – Suite 3A
New York NY  10016-3664
Tel: 212-307-4444
Fax:  212-307-0247
Email:  carlpers2@gmail.com

29